UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RODGER GOODALE,

                    Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                 Defendant.
_____

**DECISION AND
ORDER**

11-CV-821
(VEB)

## I. INTRODUCTION

In June of 2007, Plaintiff Rodger Goodale applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since October 2005 due to physical impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorneys, Olinsky Law Group, Howard D. Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties, by and through their respective counsel, consented to the jurisdiction of a United States Magistrate Judge on October 30, 2012. (Docket No. 15).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On June 19, 2007, Plaintiff applied for SSI benefits and DIB, alleging that he had been unable to work since October 3, 2005. (T at 80,89, 123).[1] The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Syracuse, New York, on August 4, 2009, before ALJ Thomas P. Tielens. (T at22). Plaintiff appeared with his attorney and testified. (T at 25-42.

On August 27, 2009, ALJ Tielens issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period and denying Plaintiff's claims for benefits. (T at 13-19). The ALJ's decision became the Commissioner's final decision on May 26, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, by and through his attorney, timely commenced this action by filing a Complaint on July 15, 2011. (Docket No. 1). The Commissioner interposed an Answer on January 20, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on March 5, 2012. (Docket No. 11). The Commissioner filed a Brief in opposition on April 19, 2012. (Docket No. 12). As noted above, the parties, through their respective attorneys of record, consented to the jurisdiction of a United States Magistrate Judge on October 30, 2012. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1]Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons set forth below, the Court finds that the Commissioner's decision is supported by substantial evidence and, as such, Plaintiff's motion is denied and the Commissioner's motion is granted.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.  Analysis**

**1.  Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2007, and had not engaged in substantial gainful activity since October 3, 2005, the alleged onset date. (T at 15).

The ALJ found that Plaintiff had the following impairments considered "severe" under the applicable Social Security Regulations (the "Regulations"): Human immunodeficiency virus ("HIV"), history of hepatitis C, and cirrhosis of the liver. (T at 16). However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 16).

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567 (b) and 416.967 (b). (T at 16-19). The ALJ further found that Plaintiff could perform his past relevant work as a cashier, as that work did not require the performance of work-related duties precluded by Plaintiff's residual functional capacity. (T at 19).

Accordingly, the ALJ determined that Plaintiff had not been under a "disability," as that term is defined under the Act, from the alleged onset date (October 3, 2005) through the date of the ALJ's decision (August 27, 2009), and was therefore not entitled to benefits. (T at 19). As noted above, the ALJ's decision became the Commissioner's final decision on May 26, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. He offers four (4) principal arguments. First, Plaintiff argues that the ALJ failed to evaluate whether his impairment met the impairment set forth at § 14.08K of the Listings. Second, Plaintiff contends that the ALJ's residual functional capacity determination is not supported by substantial evidence. Third, Plaintiff challenges the ALJ's credibility determination. Fourth, Plaintiff argues that the ALJ's analysis with respect to his ability to perform his past relevant work was flawed. This Court will address each argument in turn.

### a. Listing § 14.08K

Impairments listed in Appendix 1 of the Social Security Regulations ("the Listings") are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is

"conclusively presumed to be disabled and entitled to benefits." <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1022 (2d Cir.1995); <u>see</u> 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. <u>See</u> <u>Naegele v. Barnhart</u>, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. <u>Sullivan</u>, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. <u>Id.</u>

Section 14 of the Listings addresses adult immune system disorders. In particular, §14.08 sets forth the impairments related to HIV. The HIV-related impairment set forth at § 14.08K of the Listings is satisfied if there is a showing of (1) "repeated . . . manifestations of HIV infection," (2) "resulting in significant, documented symptoms or signs (for example,

severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia)," and (3) one of the following at a marked level: (a) limitation of activities of daily living, (b) limitation in maintaining social functioning, or (c) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 CFR, Part 404, Subpart P, App. 1, § 14.08K.

In the present case, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments set forth in the Listings. (T at 16). The ALJ did not discuss any particular Listing or cite any evidence in support of this particular aspect of his decision. Plaintiff contends that the ALJ erred because his HIV impairment met the requirements of Listing § 14.08K. For the following reasons, although the ALJ's discussion of the Listing should certainly have been more detailed, this Court ultimately finds that the ALJ's decision is supported by substantial evidence.

The Commissioner concedes for the sake of argument that Plaintiff satisfies the threshold of repeated manifestations of HIV infection (Docket No. 12, at p. 5), but argues that Plaintiff has not established the remaining requirements (i.e. significant, documented symptoms or signs and marked limitation in daily living, social functioning, or concentration, persistence or pace). Plaintiff argues that his extreme and chronic fatigue operates as a limitation sufficient to satisfy the Listing. The evidence adequately supports the Commissioner's assessment.

Plaintiff testified that he experiences fatigue from his disease and treatment. (T at 34-35). He advised Dr. Myra Shayevitz, a consultative examiner, that he needs to lie down and nap for 90 minutes or more each afternoon. (T at 227). In May of 2008, Plaintiff complained of fatigue to Patricia Grimes, his treating nurse practitioner. (T at 264). Plaintiff

completed a nap/fatigue log indicating the need for frequent daytime sleep. (T at 196).

Although the ALJ (regrettably) did not specifically discuss Listing §14.08K, he did address Plaintiff's complaints of chronic, severe fatigue and found those complaints not entirely credible. (T at 18). The ALJ's finding in this regard was supported by substantial evidence.

In October 2005, Plaintiff reported to treating Nurse Practitioner Grimes that he was "doing well" and indicated "no complaints or concerns." (T at 213). In June of 2006, Plaintiff told Dr. Madhuchhanda Choudhary, his treating physician, that he was "healthy as a horse." (T at 211). Dr. Choudhary characterized his examination as "essentially negative" other than a history of a boil on Plaintiff's back, which improved with topical care. (T at 211). In February of 2007, Dr. Choudhary indicated that Plaintiff remained "asymptomatic as far as HIV is concerned" and noted that Plaintiff had been "doing extremely well." (T at 208). In July of 2007, Nurse Practitioner Grimes, who treated Plaintiff on several occasions over an extended period, indicated that Plaintiff had "no limitations or restrictions" and described his condition as "stable." (T at 233).[4] In June of 2008, Nurse Practitioner Grimes reported

---

[4]Nurse practitioners are not considered "acceptable medical sources" under the Regulations. 20 C.F.R. § 416.913(a). However, a nurse practitioner is included among "other sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913(d)(1). While an "other source" opinion is not treated with the same deference as a treating physician's opinion, the assessment is still entitled to some weight, especially when there is a treatment relationship with the claimant. Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); see also Mejia v. Barnhart, 261 F.Supp.2d 142, 148 (E.D.N.Y.2003 (finding that the ALJ should have afforded a treating therapist's opinions at least a little weight where the therapist "saw plaintiff on a regular basis and [ ] offered a diagnosis consistent with that of the treating psychiatrist"); White v. Comm'r, 302 F.Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist); Rivera v. Bowen, 665 F.Supp. 201, 206 (S.D.N.Y.1987) (finding that the opinions of chiropractors and physical therapists must be accorded at least some weight).

that Plaintiff denied any sleep difficulties. (T at 262).

The ALJ was entitled to rely on these treatment notes, which covered an extended period of time, contradicted Plaintiff's claims of disabling fatigue, and indicated that his impairments were generally controlled and well-managed. "Conflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id.

In addition, the ALJ noted that, after the alleged onset date, Plaintiff was a full-time college student, made the Dean's List, and graduated *summa cum laude*. (T at 18, 208, 210-11, 266). The ALJ reasonably concluded that Plaintiff's ability to attend and successfully complete a college course of study suggests that his fatigue did not result in a marked limitation with regard to daily living, social functioning, or concentration, persistence or pace.

This Court finds the foregoing evidence sufficient to sustain the ALJ's implicit conclusion that Plaintiff's impairment did not meet the requirements of Listing §14.08K. In particular, the ALJ reasonably concluded that the evidence did not support a finding of significant, documented symptoms or signs (e.g. severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia), and one of the following at a marked level: (a) limitation of activities of daily living, (b) limitation in maintaining social functioning, or (c) limitation in completing tasks in a timely manner due

to deficiencies in concentration, persistence, or pace.

**b.    RFC Determination**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ determined that Plaintiff retained the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567 (b) and 416.967 (b). (T at 16-19).

Plaintiff challenges the ALJ's RFC determination on two principal grounds:  First, that the ALJ failed to provide a function-by-function assessment.  Second, that the ALJ did not properly develop the record and assess the opinions provided by his treating physicians.

**i.    Failure to Provide Function-by-Function Assessment**

An ALJ's RFC assessment must include a function-by-function analysis of the

claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis. With regard to physical limitations, this means the ALJ must make a function-by-function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y.1999). Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, *e.g.,* sedentary, light, medium, heavy, and very heavy. Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).

The ALJ in this case did not provide a function-by-function analysis. Rather, he simply expressed the RFC in terms of an exertional level of work (*i.e.* light work). (T at 16-19). The Second Circuit has not yet decided whether non-compliance with SSR 96-8p is *per se* grounds for a remand.

At least three circuit courts of appeal have concluded that a function-by-function analysis is desirable, but not an absolute requirement if the rationale for the ALJ's RFC assessment can be readily discerned. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir.2003) (an ALJ does not fail in his or her duty to assess a claimant's RFC on a function-by-function basis merely because the ALJ does not address all areas regardless of whether a limitation is found); Delgado v. Comm'r of Soc.

<u>Sec.</u>, 30 F. App'x 542, 547 (6th Cir.2002).[5]

District courts in the Second Circuit have reached conflicting conclusions, with courts in the Northern and Western Districts of New York generally finding that a remand is required when the ALJ fails to provide a function-by-function analysis. <u>See</u>, <u>e.g.</u>, <u>Wood v. Comm'r of Soc. Sec.</u>, No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009)(collecting cases); <u>McMullen v. Astrue</u>, 05-CV-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008); <u>Brown v. Barnhart</u>, No. 01-CV-2962, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr.15, 2002)("In sum, because the ALJ did not properly apply the legal standard in Social Security Ruling 96-8p for assessing residual functional capacity, I cannot properly conclude that his finding that the claimant retained the residual functional capacity to do her past work was supported by substantial evidence."); <u>Matejka v. Barnhart</u>, 386 F.Supp.2d 198, 208 (W.D.N.Y.2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk ... Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence."); <u>but</u> <u>see</u> <u>Casino-Ortiz v. Astrue</u>, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007)(sustaining ALJ's decision, notwithstanding failure to provide function-by-function analysis); <u>Novak v. Astrue</u>, No. 07 Civ 8435, 2008 WL 2882638, at *3 & n. 47 (S.D.N.Y. July 25, 2008)("The A.L.J. must avoid perfunctory determinations by considering all of the claimant's functional limitations, describing how the evidence supports her

---

[5]The Third Circuit and Seventh Circuit have reached similiar conclusions, albeit in unpublished decisions. <u>See</u> <u>Bencivengo v. Comm'r of Soc. Sec.</u>, 251 F.3d 153 (3d Cir.2000)) ("Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged."); <u>Zatz v. Astrue</u>, 346 F. App'x 107, 111 (7th Cir.2009) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.").

conclusions, and discussing the claimant's ability to maintain sustained work activity, but she need not provide a narrative discussion for each function."); but see Martin v. Astrue, No. 05-CV-72, 2008 WL 4186339, at *16 (N.D.N.Y. Sept. 9, 2008) (declining to remand, despite finding that the ALJ grouped the functions in his function-by-function analysis because "treating the activities separately would not have changed the result of the RFC determination").

This Court is inclined toward the view that, in limited circumstances, an ALJ's failure to provide a function-by-function analysis might constitute harmless error, provided that the absence of the analysis did not frustrate meaningful review of the ALJ's overall RFC assessment.[6] As set forth below, the ALJ's rationale can be readily gleaned from his decision and the RFC determination is, ultimately, supported by substantial evidence. With that said, this Court's decision should not be read as diminishing the importance of the ALJ's obligation to provide a function-by-function assessment. However, in this particular case, given the strength of the evidence supporting the ALJ's RFC determination, that error is found to be harmless.

### ii.    Compliance with the Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362

---

[6]Several courts have recognized the general applicability of the harmless error rule to the review of disability denial claims. See, e.g., Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995).

F.3d 28, 31-32 (2d Cir. 2004); <u>Shaw v. Chater</u>, 221 F.3d 126, 134 (2d Cir.2000).[7]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); <u>see</u> <u>also</u> <u>de Roman</u>, 2003 WL 21511160, at *9; <u>Shaw</u>, 221 F.3d at 134; <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir.1998); <u>Schaal v. Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998).

In the present case, in June of 2009, Dr. Donald Blair, a treating physician, completed a "check box" form provided by Plaintiff's counsel and indicated that Plaintiff could perform sedentary work, as defined under 20 C.F.R. § 404.1567 (a), 416.967 (a), on a full-time basis. (T at 319). However, Dr. Blair noted that Plaintiff could not perform light work as defined under 20 C.F.R. § 404.1567 (b), 416.967 (b), on a full-time basis. (T at 319). With regard to both assessments, Dr. Blair reported that Plaintiff's limitations would need to be reevaluated in six months. (T at 319).

The ALJ afforded "little weight" to Dr. Blair's June 2009 opinion that Plaintiff was limited to sedentary work. (T at 18). This Court finds the ALJ's assessment supported by

---

[7]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." <u>de Roman v. Barnhart</u>, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

substantial evidence and consistent with applicable law. This "check box" assessment was clearly contradicted by the contemporaneous treatment notes, including Dr. Blair's own notes, and by the balance of the medical evidence.

In September of 2008, Dr. Blair described Plaintiff as "remarkably free of symptoms." (T at 311). In January of 2009, Louise Manor, a nurse practitioner working with Dr. Blair's group, reported that Plaintiff had been "feeling fine," except for flu-like symptoms following some treatments. (T at 309). In April of 2009, Plaintiff reported that his fatigue had "diminished." (T at 307).

Indeed, the treatment notes consistently described Plaintiff as virtually symptom-free and without significant limitation with regard to any of the basic work activities. (T at 213)(reporting that Plaintiff was "doing well" with "no complaints or concerns")(T at 211)(describing Plaintiff as "healthy as a horse.")(T at 208)(indicating that Plaintiff remained "asymptomatic as far as HIV is concerned" and "has been doing exceedingly well")(T at 233)(reporting that Plaintiff had "no limitations or restrictions" and describing his condition as "stable"); (T at 262)(noting that Plaintiff "denies any difficulty sleeping"); (T at 264)(noting "some fatigue," but taking anti-retroviral medications "without any difficulties") (T at 266)(reporting that review of systems "is essentially negative")(T at 267)(noting that Plaintiff denied "any physical complaints or concerns")(T at 268)(reporting that Plaintiff had been seeking employment and was "not disabled").

Dr. Myra Shayevitz, a consultative examiner, noted generally unremarkable clinical findings (e.g. no muscle atrophy, full muscle strength, normal gait and station) (T at 227-229). Dr. Shayevitz indicated that Plaintiff had a "significant amount of chronic fatigue" only to the extent "the history given is correct." (T at 229). Dr. Jeanne Shapiro, a psychiatric

16

consultative examiner, opined that Plaintiff appeared capable of understanding and following simple instructions and directions. (T at 236-37). Subject to any "medical contraindications," Dr. Shapiro reported that Plaintiff appeared to be capable of performing simple and complex tasks with supervision and independently. (T at 237). Dr. Shapiro concluded that Plaintiff appeared to be capable of maintaining attention and concentration for tasks, regularly attending to a routine and maintaining a schedule, learning new tasks, making appropriate decisions, relating to and interacting appropriately with others, and dealing with some stress. (T at 237). She found "no significant psychiatric problems." (T at 237).

Plaintiff suggests that the ALJ should have re-contacted Dr. Blair and/or Dr. Choudhary (another treating physician) and requested a function-by-function assessment and/or further clarification regarding Plaintiff's limitations. However, Dr. Blair was asked to provide a function-by-function assessment in October of 2008 and declined to do so without explanation. (T at 305-306). Moreover, as outlined above, the record contained extensive records of treatment covering virtually the entire period of alleged disability and addressing Plaintiff's symptoms (and the general lack thereof) over an extended period. (T at 208-226, 231-33, 262-287, 288-297, 301-306, 307-317, 318-19).

While an "ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record, . . . where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir.1999).

Indeed, the ALJ's responsibility to resolve conflicts in the evidence would be

"rendered nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his [or her] opinion to the evidence." Rebull v. Massanari, 240 F. Supp.2d 265, 273 (S.D.N.Y.2002); see also Harvey v. Astrue, 05-CV-1094, 2008 WL 4517809, at *8 (N.D.N.Y. Sep. 29, 2008)("An ALJ need not seek further explanation from treating physicians each time there is an inconsistency in medical opinions.").

Accordingly, this Court finds that the ALJ's development of the record was sufficient and his consideration of the treating physicians' assessments in the context of his RFC determination was consistent with applicable law and supported by substantial evidence.

### c.    Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to

enable us to decide whether the determination is supported by substantial evidence." Lewis
v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's
contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an
> underlying medically determinable physical or medical
> impairment (s) ... that could reasonably be expected to produce
> the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity,
> persistence, and limiting effects of the individual's symptoms to
> determine the extent to which the symptoms limit the
> individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the
plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must
consider the following factors in order to make a determination regarding the plaintiff's
credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must
state his reasons "explicitly and with sufficient specificity to enable the Court to decide

whether there are legitimate reasons for the ALJ's disbelief." <u>Young v. Astrue</u>, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting <u>Brandon v. Bowen</u>, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff testified as follows: He is fatigued on a daily basis and needs to take a nap nearly every afternoon. (T at 34). He has backaches related to cirrhosis of the liver. (T at 35). He has difficulty attending to a regular schedule because of his fatigue and sleep difficulties. (T at 39).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence and limited effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. (T at 18).

The ALJ's credibility assessment was supported by substantial evidence. As outlined in detail above, the medical record did not support Plaintiff's claim of severe fatigue. Plaintiff was consistently characterized as asymptomatic, "doing well," and lacking in serious limitations. (T at 211, 213, 233, 262, 264, 266, 267, 268). The treating nurse practitioner opined that Plaintiff was not disabled. (T at 268). Although Dr. Shayevtiz (the consultative examiner) described Plaintiff's medical condition as "very serious," she did not assess any work-related limitations and her clinical findings were essentially unremarkable. (T at 229).[8] In addition, Plaintiff obtained two associate's degrees after the alleged onset

---

[8]The fact that a medical condition is "very serious" does not mean, *ipso facto*, that the claimant is disabled. Plaintiff's condition is undoubtedly serious, requiring careful attention to his health, compliance with an extensive treatment regimen, and significant caution with regard to lifestyle choices. However, these facts do not, without more, render Plaintiff disabled within the meaning of the Social Security Act. The ALJ concluded that Plaintiff is one of those HIV patients who, through the miracles of modern medicine, is able to live life "remarkably free of symptoms." (T at 311). The ALJ's conclusion in this regard was supported by substantial evidence and must therefore be sustained. <u>See</u> <u>White v. Comm'r of Social</u>

date, completing a part-time liberal arts program and a full-time criminal justice program in 2006 and 2007 respectively. (T at 25-27). A reasonable person could conclude, as the ALJ did, that the ability to attend and complete these programs contradicts Plaintiff's claim of disabling fatigue. (T at 18).[9]

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other

---

Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008)(holding that where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner.").

[9]The ALJ indicated that Plaintiff had obtained a Bachelor's degree. (T at 17). In fact, he earned two associate's degrees. (T at 25). This factual inaccuracy is immaterial. The salient point is that Plaintiff's ability to attend, and succeed in, a college program is at least somewhat inconsistent with his claim of disabling fatigue.

evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision is therefore upheld.

### d.    Past Relevant Work

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

In the present case, the ALJ concluded that Plaintiff could perform his past relevant work as a cashier because such work did not require the performance of work-related activities precluded by Plaintiff's RFC. (T at 19). This Court finds no reversible error as to

this aspect of the ALJ's decision. The ALJ's RFC determination was supported by substantial evidence, for the reasons outlined above. Plaintiff's descriptions of his work-related activities (T at 17, 30, 112-13, 124) and those set forth in relevant section of the *Dictionary of Occupational Titles* (Nos. 211.362-010) sufficiently establish that the job of cashier does not require the performance of work-related activities precluded by Plaintiff's RFC. Accordingly, this aspect of the ALJ's decision will be sustained.

## III. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the consultative examiners, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and substantial evidence supports the Commissioner's decision. As such, the Commissioner's motion for judgment on the pleadings is granted and Plaintiff's motion is denied.

## IV. ORDERS

ORDERED, that the Commissioner's Motion for Judgment on the Pleadings is GRANTED; and it is further

ORDERED, that Plaintiff's Motion for Judgment on the Pleadings is DENIED; and it is further

ORDERED, that the Clerk of the Court shall enter Judgment accordingly and close this case.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:      December 13, 2012

            Syracuse, New York